For Appellant: Kelly M. Driscoll, Montana Legal Justice, PLLC, Missoula, Montana
For Appellee: Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana, Joshua A. Racki, Cascade County Attorney, Valerie M. Winfield, Deputy County Attorney, Great Falls, Montana
Justice Beth Baker delivered the Opinion of the Court.
***148 ¶1 A.G. (Mother) appeals an order of the Eighth Judicial District, Cascade County, terminating her parental rights to her children, L.A.G. and N.L. Mother argues (1) that the District Court failed to follow the Indian Child Welfare Act (ICWA) when it proceeded through termination without a conclusive determination on the children's status in all Indian Tribes with which the children may have been affiliated, (2) that the District Court failed to address whether the Department of Public Health and Human Services made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of an Indian family, and (3) that the Department wrongfully relied on a new theory of abandonment in its closing arguments at the termination hearing. We reverse and remand with instructions regarding ICWA compliance.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 Two-year-old L.A.G. and newborn N.L. were removed from their mother's care and placed into emergency protective custody in June 2016, the day after N.L.'s birth, due to Mother's admitted methamphetamine use in early pregnancy, lack of prenatal care, positive drug test at the birth of N.L., and the children's exposure to domestic violence. On *631 June 9, 2016, the Department filed a Petition for Temporary Investigative Authority and Emergency Protective Services for each child. The petitions indicated that the Department believed both L.A.G. and N.L. were Indian children and subject to ICWA. In the petition, the Department stated that it had requested verification of the enrollment eligibility of L.A.G. and N.L. from the Blackfeet Tribe. The Department also stated it had sought verification regarding N.L. from the Little Shell Tribe of Chippewa Indians and the Chippewa Cree Tribe. The record shows that notice of involuntary child custody ***149 proceedings was sent to the Blackfeet Tribe with respect to L.A.G. and to the Blackfeet Tribe, Little Shell Tribe of Chippewa Indians, and the Chippewa Cree Tribe with respect to N.L. The Department filed signed Certified Return Receipts from the Blackfeet Tribe and the Little Shell Tribe confirming their receipt of the notification. No Certified Return Receipt was filed confirming the Chippewa Cree Tribe's receipt.
¶3 The Blackfeet Tribe wrote letters to the Department stating that L.A.G. and N.L. were not eligible for enrollment and did not qualify as Indian children. Initially, the Little Shell Tribe sent a letter stating that the children were not enrolled members or eligible for enrollment; that letter, however, contained incorrect names for the children's birth parents and an incorrect birthdate for N.L. Five months later, the Little Shell Tribe notified the court that Mother was in the final stages of enrolling. The Department never filed verification concerning either child's status in the Chippewa Cree Tribe.
¶4 On June 24, 2016, Mother met with Child Protective Specialist Micaela Stroop and reported that she was working with the Indian Health Center (IHC) on chemical dependency issues. Mother signed a release for the Department to request records from IHC but refused to allow the Department to give IHC collateral information or to sign any other releases.
¶5 In early July 2016, the Department filed a supplemental affidavit stating that L.A.G.'s tribal affiliations were Chippewa Cree and Blackfeet and that notices had been sent to both tribes. Yet, the record reflects that it did not send notice to the Chippewa Cree Tribe regarding L.A.G. The only notice of hearing to the Chippewa Cree Tribe filed in L.A.G.'s case register had N.L.'s name on it with L.A.G.'s case number. The Department did not submit proof of notice to the Chippewa Cree Tribe that had L.A.G.'s name on it.
¶6 On July 29, 2016, the District Court held a show cause hearing. Mother was present and stipulated to temporary investigative authority, which the court granted. In the beginning of August 2016, Mother relocated from Great Falls to Missoula. On October 14, 2016, the Department filed its petition to adjudicate both children as youths in need of care and for temporary legal custody. Between the time the Department received temporary investigative authority and the petition for temporary legal custody, Mother had four positive urinalysis (UA) results, one for methamphetamine and amphetamine and three for opiates. Mother also had missed three UA call-ins and a scheduled meeting with child protection specialists.
¶7 After three continuances, the adjudicatory hearing was set for January 20, 2017. A week before the scheduled hearing and without ***150 the aid of her court-appointed counsel, Mother petitioned the District Court to transfer the case to the Little Shell Tribe of Chippewa Indians, citing 25 U.S.C. § 1911(b). Mother also claimed that she was "a direct descendant of the Rocky Boy Band of Chippewa Indians, as are [her] daughters, and qualify but have not yet sought enrollment in that tribe." Mother stated that she "retain[ed] [her] right to petition for transfer to [the Chippewa Cree] tribe as a second option." Mother served the petition on Child Protection Specialist Kayla Moodie, the children's placement, and the Little Shell Tribe of Indians; she failed, however, to serve the birth fathers or the other Tribes. The Little Shell Chairman then wrote a letter to the District Court requesting that the children be placed with family members or within the Little Shell Tribe. The Department filed its response, arguing that the Little Shell Tribe did not have the "appropriate powers and authorities to assume jurisdiction in this case" because it is not a federally recognized tribe. The Department also acknowledged *632 that the Chippewa Cree Tribe may have an interest in the welfare of the children and that it "ought to receive notice of these proceedings." The Department sent copies of this response to both the Little Shell Tribe and the Chippewa Cree Tribe, but there was not a certificate of service.
¶8 In September 2017, the Department filed a petition for termination of rights. Notice of the petition was sent to the Blackfeet Tribe, Chippewa Cree Tribe, and the Little Shell Tribe for both children. A signed Certified Mail Return Receipt was filed for all three Tribes in both case registers.
¶9 The District Court held a termination hearing on January 17, 2018. The court issued its order approximately a week later, terminating Mother's parental rights. The District Court concluded beyond a reasonable doubt that Mother had failed to complete her treatment plan or maintain substantial relationships with the children. It also concluded that Mother did not intend to resume care of the children in the future, and thus had abandoned L.A.G. and N.L. pursuant to § 41-3-609(1)(b), MCA. The court found that returning the children to Mother's custody likely would result in serious emotional and/or physical harm. The District Court did not make any specific findings addressing the testimony of ICWA expert Anna Fisher. Nor did it make any findings or conclusions regarding active efforts under 25 U.S.C. § 1912(d).
STANDARD OF REVIEW
¶10 Whether a district court has complied with ICWA's substantive and procedural requirements presents a question of law, ***151 which we review to determine whether the court's application of the law is correct. In re M.S. , 2014 MT 265A, ¶ 12, 376 Mont. 394, 336 P.3d 930 ; In re K.B. , 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836.
DISCUSSION
¶11 1. Did the District Court err when it proceeded with termination of Mother's parental rights before it had a conclusive determination of the children's affiliation with the Chippewa Cree Tribe?
¶12 Mother first argues that the District Court violated ICWA when it did not have a conclusive determination of the children's status in the Chippewa Cree Tribe before proceeding with the case. Mother contends that the Department had reason to know that the children may be members of the Chippewa Cree Tribe and was required to work with the Tribe to verify whether the children are members. See 25 C.F.R. § 23.107(b)(1).
¶13 ICWA sets forth minimum federal requirements, which state courts must strictly follow, for the removal of Indian children from their families. 25 U.S.C. § 1902 ; see also § 41-3-109, MCA. ICWA applies to all state court child custody proceedings involving an "Indian child." 25 C.F.R. § 23.103(a)(1). An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Tribes have the sole power to determine whether a child is an "Indian child." In re A.G. , 2005 MT 81, ¶ 13, 326 Mont. 403, 109 P.3d 756. "[T]he threshold questions of fact for district courts are (1) whether the court has reason to believe that a subject child may be an 'Indian child' and (2) whether an Indian tribe has conclusively determined the child is a member or eligible for tribal membership." In re D.E. , 2018 MT 196, ¶ 25, 392 Mont. 297, 423 P.3d 586.
¶14 If a court has reason to know that the child is an Indian child, but it does not have sufficient evidence on which to base that determination, then the court must:
(1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is a reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and
(2) Treat the child as an Indian child, unless and until it is determined on the record *633 that the child does not meet the definition of an "Indian child" in this part.
***152 25 C.F.R. § 23.107(b). Once the court has reason to know that a child is a member of a Tribe, then certain obligations are triggered under the statute and regulations. The court must confirm that the agency used due diligence to comply with 25 C.F.R. § 23.107(b). Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act 11 (Dec. 2016). And the State must notify the child's Tribe of the pending child-custody proceedings by registered or certified mail with return receipt requested before seeking the foster-care placement of, or the termination of parental rights to, an Indian child. 25 U.S.C. § 1912(a) ; 25 C.F.R. § 23.11(a). Failure to provide proper notice violates ICWA's plain requirements. In re K.B. , ¶ 25. What's more, "[a]bsent a conclusive tribal determination of membership or membership eligibility, a district court may not proceed with termination proceedings under ICWA or § 41-3-609, MCA, if a reason exists to believe that a child may be an Indian child." In re L.D. , 2018 MT 60, ¶ 14, 391 Mont. 33, 414 P.3d 768.
¶15 Here, the District Court had reason to believe that L.A.G. and N.L. were Indian children because the Department stated they were Indian children when proceedings began. The District Court had reason to believe that both children may be eligible for enrollment in the Chippewa Cree Tribe, because Mother claimed in her Petition to Transfer Jurisdiction that she and her daughters were "direct descendant[s] of the Rocky Boy Band of Chippewa Indians," and they qualified for enrollment. The Department also stated that L.A.G. was affiliated with the Chippewa Cree Tribe and that a verification request had been sent, even though the record reflects that it had not.
¶16 The Department sent notice to the Chippewa Cree Tribe regarding the involuntary child custody proceeding of N.L., but not regarding L.A.G. There was no proof in the record that the Chippewa Cree Tribe received notice of the involuntary child custody proceedings for either child. Although it filed notice in L.A.G.'s case register with N.L.'s name on it stating that the notice was sent via certified mail, there was never any Certified Return Receipt filed. Additionally, there is no evidence that the Department ever received verification of enrollment status from the Chippewa Cree Tribe. The District Court failed to confirm that due diligence was used to work with the Chippewa Cree Tribe when it did not confirm that the Chippewa Cree Tribe received notice of the proceedings or that verification of L.A.G.'s status had been requested. Thus, it failed to satisfy the threshold requirement to verify L.A.G.'s and N.L.'s eligibility.
¶17 Although the court applied ICWA standards throughout the proceedings, we reject the Department's argument that ICWA did not ***153 also require determination of the children's affiliated Tribe. It is insufficient merely to treat the children as Indian children; the Chippewa Cree Tribe must have been notified by certified mail with return receipt requested and given the opportunity, if applicable, to participate. See In re K.B. , ¶ 25. The Department's failure to prove proper notice becomes even more significant when the only other tribe to show interest, the Little Shell, is not a federally recognized tribe that could have assumed jurisdiction under ICWA. See 25 U.S.C. § 1911(b) ; 25 U.S.C. § 1903(8).
¶18 We have recognized that "[a]n error involving notice to a tribe is not ground for reversal unless there is a 'reasonable probability that [the appellant] would have obtained a more favorable result in the absence of the error.' " In re M.S. , ¶ 22 (citation omitted). Although the Department failed to provide adequate notice in that case, the record showed that the appropriate Tribe "was aware of the case but, after evaluating the circumstances, did not assume an active role or interest in participating in the matter." In re M.S. , ¶ 23. The record here contains no such showing.
¶19 We reverse and remand for an appropriate threshold determination of the children's membership and eligibility for enrollment in the Chippewa Cree Tribe. Depending on that determination, the District Court shall hold such further proceedings as may be necessary to comply with the requirements of ICWA.
*634 ¶20 2. Did the District Court err when it did not address whether the Department provided "active efforts" to Mother?
¶21 Mother next argues that ICWA's minimum federal standards require the District Court to conclude that the Department provided "active efforts" to prevent the breakup of the Indian family and that those efforts were unsuccessful. See 25 U.S.C. § 1912(d). The District Court thus abused its discretion when it terminated her rights without addressing whether the Department had provided her with active efforts. The Department concedes that the District Court's order did not explicitly state that the Department made active efforts, but argues that the court's "oral findings and comments" and its written order "implicitly establish the court agreed active efforts had been made." The Department relies on In re M.R.G. , 2004 MT 172, ¶ 16, 322 Mont. 60, 97 P.3d 1085, to support its argument.
¶22 The state and federal criteria for termination in ICWA cases must be established by evidence beyond a reasonable doubt. 25 U.S.C. § 1912(f) ; § 41-3-422(5)(b), MCA. The court may order a termination of parental rights upon finding beyond a reasonable doubt that the child is an adjudicated youth in need of care and (1) the court-approved ***154 treatment plan has not been complied with and (2) the conduct or conditions of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.
¶23 In addition to these state law requirements, "the court must conclude that active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful." 25 C.F.R. § 23.120(a) ; see 25 U.S.C. 1912(d). "Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family." 25 C.F.R. § 23.2.
¶24 In In re M.R.G. , the district court did not specifically cite the beyond-a-reasonable-doubt standard of proof in its order. In re M.R.G. , ¶ 17. That appellant argued that the district court incorrectly used a standard of what was "likely" when in making its determinations it stated the parent "would likely cause serious emotional or physical damage to [the child] if he was returned to [his mother]." In re M.R.G. , ¶ 14 (emphasis in original). We held that the court did not apply an incorrect standard of what was "likely"; its order, rather, mirrored the language of 25 U.S.C. § 1912(f), which provides beyond a reasonable doubt as the standard. In re M.R.G. , ¶ 14. Despite the district court's failure specifically to state the beyond-a-reasonable-doubt standard in its order, it applied the proper standard in that case. In re M.R.G. , ¶ 17.
¶25 Under the doctrine of implied findings, "otherwise facially insufficient findings of fact may be minimally sufficient if, within the scope of the express findings made, more specific findings of fact 'necessary to the determination' can be clearly inferred from other express findings or the evidentiary record." In re D.L.B. , 2017 MT 106, ¶ 13, 387 Mont. 323, 394 P.3d 169 (quoting In re S.G.R. , 2016 MT 70, ¶¶ 20-24, 383 Mont. 74, 368 P.3d 1180 ); see also In re J.B., Jr. , 2016 MT 68, ¶ 25, 383 Mont. 48, 368 P.3d 715. But "the implied findings doctrine is not unlimited," particularly when the proceeding involves express statutory requirements. In re D.L.B. , ¶ 14. Here there are no implicit findings or conclusions regarding active efforts or the requirements of 25 U.S.C. § 1912(d). The court orally stated at the termination hearing:
With regard to [Mother] and [N.L.'s birth father], the State has met its burden of proving the termination beyond a reasonable doubt. A treatment plan has been ordered for both parents. The treatment plan has not been complied with. There's no indication that the condition bringing the parents into court is unlikely to change within a reasonable period of time. And the State has satisfied its burden, and based on the recommendation of the ***155 Guardian ad Litem, that the termination is in the best interest of the child.
The court's oral findings and the order mirror the language of § 41-3-609(1)(f), MCA, but not the language of the federal statute.
¶26 There is no language in the court's oral or written findings that implicitly suggests *635 the Department complied with 25 U.S.C. § 1912(d). The court did not address the issue at all. The lack of findings or a conclusion that active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful fails to comply with ICWA. See In re K.B. , ¶¶ 32-34. We reverse and remand for the District Court to enter a new order addressing whether the Department made "active efforts" pursuant to 25 U.S.C. § 1912(d). The court may, in its discretion, hold a new hearing if it finds the existing record inadequate to make such a determination.
¶27 3. Were Mother's due process rights violated when the Department raised the issue of abandonment during the closing arguments of the termination hearing and her counsel failed to object?
¶28 In argument at the close of the termination hearing, the Department maintained that when an Indian parent abandons an Indian child prior to birth and that child has never been in the Indian parent's legal or physical custody, then the breakup of the family already has occurred and 25 U.S.C. § 1912(d) is inapplicable. The Department did not develop the argument, but did contend that the principle "specifically applies to [N.L.] and her parents," because the Department removed N.L. from her parents' custody at birth. Mother challenges the Department's argument that 25 U.S.C. § 1912(d) does not apply in this case, as well as her counsel's failure to object to that argument. Mother contends that the Department misconstrued the holding of Adoptive Couple v. Baby Girl , 570 U.S. 637, 133 S.Ct. 2552, 186 L.Ed.2d 729 (2013). We agree with Mother that the Department's apparent reference in the District Court to the application of Baby Girl was not an apt application of that case. The District Court's decision was not based on this argument, and the Department does not pursue it on appeal. Thus, it is unnecessary to discuss this issue further. Because the District Court did not rely on this theory of abandonment, Mother's due process rights were not violated.
CONCLUSION
¶29 We reverse and remand for further action in accordance with this Opinion. If the District Court receives a conclusive tribal determination that L.A.G. and N.L. are affiliated with the Chippewa Cree Tribe, it shall conduct any further proceedings that may be ***156 necessary to meet the requirements of Title 41, chapter 3, MCA, and applicable ICWA standards. If no further proceedings are needed, then the court shall determine whether the Department complied with ICWA's "active efforts" requirement. If the District Court determines that active efforts were made, it may re-enter judgment against Mother on the merits of its prior findings of fact and conclusions of law.
We Concur:
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.
INGRID GUSTAFSON, J.