For Appellant: Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana
For Appellee: Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana, Josh Racki, Cascade County Attorney, Valerie Winfield, Deputy County Attorney, Great Falls, Montana
Justice Ingrid Gustafson delivered the Opinion of the Court.
***531 ¶1 T.Y. (Father) appeals the Eighth Judicial District Court, Cascade County's February 20, 2018 Order terminating his parental rights to his children B.Y. (born in 2011) and R.Y. (born in 2012) (Children). Although a separate cause number was assigned for each child's case, proceedings occurred simultaneously in the District Court with shared facts and procedural histories. We consolidated these two cases for ***532 purposes of appeal. We reverse and remand for further action consistent with this opinion.
¶2 The issue on appeal is:
Whether the District Court erred in terminating Father's parental rights?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On January 8, 2016, the Child and Family Services Division of the Montana Department of Public Health and Human Services (Department) filed a Petition for Emergency Protective Services, Adjudication of Child as Youth in Need of Care (YINC), and Temporary Legal Custody regarding the Children due to concerns of physical neglect. Father moved Children to their paternal grandmother's (Grandmother's) care after discovering S.Z. (Mother) had left Children by themselves. After two days without hearing from Father, Grandmother called the Department because she was unable to care for them. The Children were adjudicated as YINC on February 19, 2016. The court found Father's treatment plan was appropriate and ordered it on March 4, 2016.
¶4 The first Department affidavits state the Children may be Indian children under the Indian Child Welfare Act (ICWA), but the Department argued in its Petition that it had not been able to provide the "active efforts" required by ICWA prior to removal because neither parent was available to care for Children. The Department sent notices to the Chippewa Cree, Little Shell Chippewa, Blackfeet, Confederated Salish and Kootenai (CSK), and the Turtle Mountain Band of Chippewa. All tribes responded that the Children were not enrolled or enrollable except CSK, which did not respond.
¶5 On August 14, 2017, the Department petitioned to terminate Father's parental rights to Children based on § 41-3-609(1)(f), MCA, citing his failure to complete a treatment plan and asserting he was unlikely to change within a reasonable time. The court scheduled a review hearing on August 18, 2017, and a termination hearing on November 15, 2017. At the November hearing the court gave the parents another 90 days to complete their treatment plans. On February 14, 2018, the court held another termination hearing at which the Department presented evidence that its primary concern was parenting ability.
*131 ¶6 On February 20, 2018, two years and one day after the Children were removed, the District Court issued an Order terminating Father's parental rights. The Order found the Children were Indian children and that their known tribal affiliation is CSK and Little Shell ***533 Chippewa (even though the Little Shell Chippewa had responded on November 3, 2017 that neither child was eligible, and CSK had never responded at all). Neither hearing transcripts nor written orders discuss how the Department made "active efforts" before removal and before termination.[1] Father appeals.
STANDARD OF REVIEW
¶7 We review a district court decision to terminate parental rights for an abuse of discretion under the applicable standards of Title 41, chapter 3, MCA, and ICWA, Title 25, Chapter 21, U.S.C. In this context, a court abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." Findings of fact are clearly erroneous if not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court has a definite and firm conviction that the lower court was mistaken. We review conclusions of law de novo for correctness. In re D.E. , 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586 (internal citations omitted).
DISCUSSION
¶8 ICWA requires proof beyond a reasonable doubt that a state seeking termination of parental rights to an Indian child has made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful, In re D.E. , n.2 (citing 25 U.S.C. § 1912(d) ). Active efforts prior to removal must be proven by clear and convincing evidence. In re G.S ., 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063. Non-ICWA cases are subject to § 41-3-423, MCA, which ***534 requires the Department to make "reasonable efforts."
¶9 Federal regulation requires courts to ensure "active efforts" were made:
(a) Prior to ordering an involuntary foster-care placement or termination of parental rights, the court must conclude that active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful.
(b) Active efforts must be documented in detail in the record.
25 CFR 23.120, accord 25 USCS § 1912(d). Thus, the district court must document in detail in the record how active efforts have been made by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination. Federal regulations specifically define "active efforts":
Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family. Where an agency is involved in the child-custody proceeding, active efforts must involve assisting the parent or parents or Indian custodian through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan. To the maximum extent possible, active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the Indian child and the Indian child's parents, extended family members, Indian custodians, and Tribe. Active efforts *132 are to be tailored to the facts and circumstances of the case and may include, for example:
(1) Conducting a comprehensive assessment of the circumstances of the Indian child's family, with a focus on safe reunification as the most desirable goal;
(2) Identifying appropriate services and helping the parents to overcome barriers, including actively assisting the parents in obtaining such services;
(3) Identifying, notifying, and inviting representatives of the Indian child's Tribe to participate in providing support and services to the Indian child's family and in family team meetings, permanency planning, and resolution of placement issues;
(4) Conducting or causing to be conducted a diligent search for the Indian child's extended family members, and contacting and consulting with extended family members to provide family structure and support for the Indian child and the Indian child's parents;
***535 (5) Offering and employing all available and culturally appropriate family preservation strategies and facilitating the use of remedial and rehabilitative services provided by the child's Tribe;
(6) Taking steps to keep siblings together whenever possible;
(7) Supporting regular visits with parents or Indian custodians in the most natural setting possible as well as trial home visits of the Indian child during any period of removal, consistent with the need to ensure the health, safety, and welfare of the child;
(8) Identifying community resources including housing, financial, transportation, mental health, substance abuse, and peer support services and actively assisting the Indian child's parents or, when appropriate, the child's family, in utilizing and accessing those resources;
(9) Monitoring progress and participation in services;
(10) Considering alternative ways to address the needs of the Indian child's parents and, where appropriate, the family, if the optimum services do not exist or are not available;
(11) Providing post-reunification services and monitoring.
25 CFR 23.2.
¶10 Here, the District Court had reason to know the Children may be Indian children because the first Department affidavits stated the Children may be Indian children under ICWA. While the Department served a request to confirm or dispel the Children's status as Indian children on each identified tribe, CSK neither confirmed the Children's Indian or non-Indian status. Without an answer from CSK, the District Court correctly determined to proceed as if the Children were Indian children and ICWA applied. Thereafter, however, the court failed to make specific findings, orally or in writing, about how or if the facts of the case met the "active efforts" required by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination. 25 U.S.C. § 1912(d) ; 25 CFR 23.2. The lack of detailed findings of what active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful fails to comply with ICWA. E.g. , In re L.A.G. , 2018 MT 255, ¶ 26, 393 Mont. 146, 429 P.3d 629.
¶11 Based on the District Court's failure to address active efforts, it is appropriate to vacate the District Court's Order and remand the matter for the court to "document in detail" if the Department met its burden of providing "active efforts" by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination pursuant to 25 U.S.C. § 1912(d) and 25 CFR 23.2, and to conduct any ***536 additional proceedings it determines necessary to make this determination. If the District Court determines the Department met this burden it may supplement its Order terminating Father's parental rights expressly setting forth its analysis consistent with this opinion. If the District Court determines the State failed to meet its burden to provide active efforts prior to removal, prior to termination, or both, then the court shall conduct further proceedings as necessary to meet ICWA standards. *133 CONCLUSION
¶12 We reverse and remand for further action in accordance with this Opinion. If the District Court finds the Department has proven that it made active efforts by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination, the court may re-enter judgment against Father on the merits of its prior Order with supplemental findings "documenting in detail" how the Department met its burden. If the District Court finds the Department has not proven that it made active efforts prior to removal, prior to termination, or both, it shall conduct further proceedings as necessary to meet ICWA standards.
We concur:
LAURIE McKINNON, J.
JIM RICE, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The following is the only substantive conversation about "active efforts" in the record. Answering questions from Mother's counsel about what happened prior to removal, the Department social worker testified as follows:
Q: [U]nder ICWA you are required to make active efforts ... to avoid the displacement or the breakup of the family. [W]hat efforts did you make?
A: I talked with several family members. I talked with [maternal grandmother] that day as well. I talked to [Father] about what options he had to get back to Cascade. And he said that he's going to try to use his mom's car, but that mom said, no, that's not an option anymore.
Q: Okay. And so that's the only thing you did?
A: Mm-hmm.