DA 23-0010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 156N

IN THE MATTER OF:

D.Y.H-J and R.J.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. BDN-19-146 and
BDN-19-174
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Austin Wallis, Hathaway Law Group, Whitefish, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Rachelle Lynn, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  July 12, 2023

Decided:  August 15, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Q.B.J. (Father) appeals the Order terminating his parental rights to his children D.Y.H-J. (D.J.) and R.J. issued by the Eighth Judicial District Court, Cascade County, on December 13, 2022. We reverse and remand for further proceedings in accordance with this Opinion.

¶3 The following is a non-comprehensive background of the case provided to address the issues—whether the District Court employed the correct burden of proof for termination and whether the Department provided active efforts to prevent the breakup of the Indian family as required by § 1912(d) of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq.

¶4 On April 24, 2019, the children were removed and placed into emergency custody following a report of domestic violence between Father and his girlfriend, where it was reported Father was the aggressor and would be arrested. At the time of removal, Father could not identify an appropriate caregiver for the children to stay with until his release.

¶5 On May 1, 2019, the Child and Family Services Division of the Montana Department of Public Health and Human Services (Department) filed a Petition for

Emergency Protective Services (EPS), Adjudication as Youths in Need of Care (YINC), and Temporary Legal Custody (TLC). As Father is an enrolled member of the Rosebud Sioux Tribe (the Tribe), the Tribe filed a notice of intervention. Throughout the entirety of the proceedings, the children were considered Indian Children under ICWA.

¶6 The show cause hearing was held June 20, 2019, at which the CPS caseworker Mandy Kelsey testified the Department initially got involved due to physical violence and partner-family member assault but then learned there had been a prior child dependency case in South Dakota where drug use was involved.[1] CPS Kelsey spoke to the CPS worker in South Dakota, following which the drug use concerns were not resolved and she determined Father's completion of various programs in 2018 did not address Father's current inability to provide a safe and stable home for the children. At that hearing, Father admitted he had pending criminal charges and did not have a consistent residence. Upon expressing concerns that the initial safety concerns may have passed, the District Court granted EPS and Temporary Investigative Authority to allow the Department to further investigate Father's parenting capacities and provide Father opportunity to pursue appropriate housing. Over the next few months, the Department's concerns regarding Father's ability to provide a safe and stable home did not abate.

¶7 On September 3, 2019, the Department filed for adjudication of the children as YINCs and sought TLC. Following a couple of continuances, the adjudication and

_____

[1] During the pendency of the 2017 South Dakota case, the children spent 10 months in foster care.

3

disposition hearing was held on November 7, 2019. Father was not present at the hearing. After expressing appropriate concern regarding the "whisker" thin active efforts provided by the Department and expressing that the children needed to be in an ICWA-compliant placement as they were currently not, the District Court adjudicated the children to be YINCs, granted TLC to the Department, and approved the Department's proposed treatment plan for Father.

¶8 On February 4, 2021, the Department filed a petition seeking to terminate Father's parental rights. On May 20, 2021, the hearing on the Department's petition seeking termination of Father's parental rights commenced and continued thereafter on July 15, 2021, September 30, 2021, August 25, 2022, and November 18, 2022.[2]

¶9 At the November 18, 2022 termination hearing, the District Court granted the Department's request to limit evidence to the issues pled in the amended petition in accordance with § 41-3-609(4)(c), MCA—long-term incarceration. At the conclusion of the hearing, the Department argued Father would be incarcerated more than a year and, given the circumstances of the children, it would be in the best interests of the children to terminate Father's parental rights. The Department further asserted the Department had

---

[2] The Department originally sought termination pursuant to § 41-3-609(1)(f), MCA, asserting Father failed to successfully complete his treatment plan and the conduct rendering him unfit or unable to parent was not likely to change in a reasonable period of time. Following commencement of the termination hearing, the Department amended its petition seeking an alternate basis for termination pursuant to § 41-3-609(4)(c), MCA—a treatment plan was not required as Father will be incarcerated for more than a year and reunification is not in the best interests of the children.

made active efforts to place the children in an ICWA-compliant placement but the only identified placements had been denied during the ICPC process.[3] Father's counsel asserted the Department did not make active efforts to place the children in an ICWA-compliant placement or to provide rehabilitative services to prevent the breakup of this Indian family. The District Court engaged in discussion with Mr. Lloyd Guy, ICWA legal counsel for the Rosebud Sioux Tribes. Mr. Guy related it was the Tribe's position that active efforts had not been provided as required by ICWA. Further, Mr. Guy advised the District Court that even if Father's parental rights were terminated, family still has a placement preference with regard to adoptive placement preferences. Ultimately, the District Court terminated Father's parental rights, explaining "under the theory of long-term incarceration, I am finding that the [D]epartment has made active efforts to prevent a break up of the Indian family, and has provided active efforts, and there is good cause in terms of the current placement. . . . And I am just satisfied that the State has made the efforts and the [D]epartment has made the efforts required under law by the burden set forth under the law to meet its burden."[4] Prior to this oral pronouncement, neither party argued nor advised the court as to the legal evidentiary standard it must apply. Further, the District Court did not specifically delineate what it believed "the burden set forth under the law" to be and

---

[3] An ICPC is a home study done pursuant to the Interstate Compact on the Placement of Children.

[4] The District Court did not specifically identify any specific efforts of the Department it considered to be active efforts.

made no reference whatsoever to the applicable "beyond a reasonable doubt" standard. The court further found, "there is good cause in terms of the current placement" but indicated this finding "does not mean permanent placement," which the District Court left open for consideration by the court handling any future adoption action.

¶10 The District Court issued its written order terminating Father's parental rights on December 13, 2022. In this order, the District Court made conclusions of law that: there was "clear and convincing evidence" that Father would be incarcerated in excess of one year and reunification was not in the children's best interests; there was "clear and convincing evidence" that the conduct or condition rendering Father unfit or unable to parent was not likely to change in a reasonable period of time; and there was "clear and convincing evidence" that appropriate active efforts were made by the Department but were ultimately unsuccessful. In this order, the District Court again did not detail specific efforts it considered to be active efforts taken by the Department prior to removal and those taken after removal prior to termination.

¶11 Father appeals the termination of his legal rights asserting the Department did not provide Father with "active efforts to provide Father with services and to prevent the breakup of the Indian family as required by § 1912(d) of ICWA." Father asserts the Department's efforts were, at best, passive, and not specific to his needs. He asserts the Department was untimely in conducting ICPCs for potential ICWA-compliant placements and failed to describe why it could not reunify after the emergency situation leading to the children's removal had ended. Additionally, Father asserts reversible error as the District

6

Court used the "clear and convincing evidence" standard, rather than the "beyond a reasonable doubt" standard required by 25 U.S.C. § 1912(f).

¶12 The Department counters that the record supports that active efforts were made and further substantial, credible evidence supported finding, beyond a reasonable doubt, that a treatment plan was not required to terminate Father's parental rights because of his long-term incarceration, the condition that rendered Father unfit or unable to parent was not likely to change in a reasonable period of time, and continued custody with Father would likely result in serious emotional or physical damage to the children. The Department asserts the District Court made a scrivener's error related to the burden of proof in its written termination order as all parties were aware that ICWA standards applied, "so it is more than likely the court's misstatement of the burden of proof was simply a scrivener error." Alternately, the Department asserts that even though the District Court did not issue a specific finding on the burden of proof applicable in an ICWA case, it was implicit in the court's statements. The Department asserts substantial evidence exists to establish the state and federal termination criteria beyond a reasonable doubt. Finally, the Department asserts that should we determine the District Court applied an incorrect legal standard, remand to allow the District Court to apply the correct legal standard is the appropriate remedy.

¶13 We review a district court's decision to terminate parental rights for an abuse of discretion under the applicable standards of Title 41, chapter 3, MCA, and ICWA. In this context, a court abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise "acts arbitrarily,

7

without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." Findings of fact are clearly erroneous if not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court has a definite and firm conviction that the lower court was mistaken. *In re B.Y.*, 2018 MT 309, ¶ 7, 393 Mont. 530, 432 P.3d 129 (citing *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586). We review conclusions of law de novo for correctness. *In re B.Y.*, ¶ 7 (citing *In re D.E.*, ¶ 21).

¶14    There is no dispute that the children at issue herein are Indian children and the requirements of ICWA apply. ICWA requires proof beyond a reasonable doubt that a state seeking termination of parental rights to an Indian child has made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful. *In re B.Y.*, ¶ 8; 25 U.S.C. § 1912(d). Active efforts prior to removal must be proven by clear and convincing evidence. *In re B.Y.*, ¶ 8 (citing *In re G.S.*, 2002 MT 245, ¶ 33, 312 Mont. 108, 59 P.3d 1063). Non-ICWA cases are subject to § 41-3-423, MCA, which requires the Department to make "reasonable efforts."

¶15    Federal regulation requires courts to ensure "active efforts" were made:

(a) Prior to ordering an involuntary foster-care placement or termination of parental rights, the court must conclude that active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful.

(b) Active efforts must be documented in detail in the record.

8

25 CFR 23.120; *accord* 25 U.S.C. § 1912(d). Thus, a district court must document in detail in the record how active efforts have been made by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination. *In re B.Y.*, ¶ 9. Federal regulations specifically define "active efforts":

Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family. Where an agency is involved in the child-custody proceeding, active efforts must involve assisting the parent or parents or Indian custodian through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan. To the maximum extent possible, active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the Indian child and the Indian child's parents, extended family members, Indian custodians, and Tribe. Active efforts are to be tailored to the facts and circumstances of the case and may include, for example:

(1) Conducting a comprehensive assessment of the circumstances of the Indian child's family, with a focus on safe reunification as the most desirable goal;

(2) Identifying appropriate services and helping the parents to overcome barriers, including actively assisting the parents in obtaining such services;

(3) Identifying, notifying, and inviting representatives of the Indian child's Tribe to participate in providing support and services to the Indian child's family and in family team meetings, permanency planning, and resolution of placement issues;

(4) Conducting or causing to be conducted a diligent search for the Indian child's extended family members, and contacting and consulting with extended family members to provide family structure and support for the Indian child and the Indian child's parents;

(5) Offering and employing all available and culturally appropriate family preservation strategies and facilitating the use of remedial and rehabilitative services provided by the child's Tribe;

9

(6) Taking steps to keep siblings together whenever possible;

(7) Supporting regular visits with parents or Indian custodians in the most natural setting possible as well as trial home visits of the Indian child during any period of removal, consistent with the need to ensure the health, safety, and welfare of the child;

(8) Identifying community resources including housing, financial, transportation, mental health, substance abuse, and peer support services and actively assisting the Indian child's parents or, when appropriate, the child's family, in utilizing and accessing those resources;

(9) Monitoring progress and participation in services;

(10) Considering alternative ways to address the needs of the Indian child's parents and, where appropriate, the family, if the optimum services do not exist or are not available;

(11) Providing post-reunification services and monitoring.

25 CFR 23.2.

¶16    There is no dispute that the District Court's written order terminating Father's parental rights references application of an incorrect legal standard for this ICWA case—one of "clear and convincing evidence" rather than proof "beyond a reasonable doubt." The Department asserts this to be a scrivener's error. A scrivener's error is "[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; esp. a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." *Clerical error*, *Black's Law Dictionary* (11th ed. 2019 ("Also termed *scrivener's error*[.]").

¶17     The record is insufficient for us to determine the District Court's specific and repeated reference concluding the existence of "clear and convincing evidence" really meant it employed the legal standard of proof beyond a reasonable doubt. The District Court made no mention upon its oral pronouncement of employing the legal standard of proof beyond a reasonable doubt and the parties did not beforehand advise the court of the correct legal standard.[5]

¶18     Next, the Department asserts it was implicit in the court's statements that it applied the correct burden. We are not persuaded by this argument. We agree that the District Court recognized the requirement that the Department was required to provide active efforts. However, as already discussed, the record of the court's oral pronouncement and the context surrounding it, do not make it clear the District Court understood the heightened evidentiary burden related to active efforts and its written order on its face applies a lesser evidentiary standard.

¶19     Father asserts that the District Court employed an incorrect evidentiary standard such that the proper remedy is to reverse and remand to nearly the outset stage of the case—to the Department's Petition for Adjudication and TLC. Conversely, the Department

---

[5] While the Department notes that throughout the proceedings its pleadings set forth the required heightened burden of proof, we find this insufficient as there is nothing in the record upon the District Court's oral pronouncement that it understood the heightened burden at that time and was in fact applying that heightened burden—especially when considered in conjunction with its subsequent written order which repeatedly asserts application of the lesser "clear and convincing evidence" burden of proof.

argues that when a court applies the wrong standard of proof, the matter should be remanded to the court to apply the correct standard of proof.

¶20    In its oral pronouncement and in its written termination order, other than proclaiming the Department engaged in active efforts, the District Court did not provide detailed findings as to what active efforts were made by the Department to comply with ICWA placement preferences and thereafter to prevent the breakup of this Indian family. The lack of detailed findings of what active efforts have been made to prevent the breakup of the Indian family and that those efforts have been unsuccessful fails to comply with ICWA. *In re B.Y.*, ¶ 10. Further, from the record before us, we cannot determine whether the District Court applied the correct standard of proof. From the court's oral pronouncement that it is "satisfied that the State has made the efforts and the [D]epartment has made the efforts required under law by the burden set forth under the law to meet its burden[,]" it is possible the District Court fully understood the heightened burden of proof required in ICWA cases and from its written order it is equally possible the court employed a lesser standard of proof. Given this, the termination orders, both oral and written, issued by the District Court should be vacated and the matter remanded to the District Court to enter a new order to "document in detail" if the Department met its burden of providing "active efforts" by clear and convincing evidence prior to removal and beyond a reasonable doubt prior to termination pursuant to 25 U.S.C. § 1912(d) and 25 CFR 23.2, and to conduct any additional proceedings it determines necessary to make this determination. Upon applying the proper evidentiary proof standard, if the District Court determines the

12

Department met this burden it may issue an Order terminating Father's parental rights expressly setting forth the active efforts made at each stage and its analysis consistent with this Opinion. On the other hand, if the District Court determines the Department failed to meet its burden to provide active efforts prior to removal, prior to termination, or both, then the court shall conduct further proceedings as necessary to meet these standards.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22 Reversed and remanded for action consistent with this Opinion.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE