No. 84-224

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF

R.B., JR., a Youth in Need of Care.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Brett C. Asselstine, Great Falls, Montana
Jeffrey T. McAllister, Great Falls, Montana
Stephen Hagerman, Great Falls, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana   (Barbara Bell, Deputy)

_____

Submitted on Briefs: April 4, 1985

Decided: July 25, 1985

Filed: JUL 25 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The father of R.B., Jr., appeals from an order of the Cascade County District Court, which declared R.B., Jr., a youth in need of care and a youth abandoned by his father. Permanent custody of R.B., Jr., including authority to consent to his adoption, was granted to the Department of Social and Rehabilitation Services (SRS). We reverse the District Court's order terminating the father's parental rights and remand the case for findings and further proceedings.

The issues presented on appeal are:

1. Was there a proper factual and statutory basis for the conclusion by the District Court that the father abandoned his son?

2. Was there a basis for concluding that the father's parental rights should be terminated because of a failure to comply with an appropriate treatment plan and for finding that the conduct of the father rendering him unfit is unlikely to change?

The District Court found that the father and mother were married in 1977. R.B., Jr., was born on December 1, 1978. The parents were divorced on January 10, 1980. The mother was awarded sole custody of the child. The father was required to pay support of $125 per month.

On July 18, 1980, the District Court returned joint custody of the child to the mother and father. The court ordered that, notwithstanding the divorce, the father be allowed to remain in the home so long as it was agreeable to the mother. The court further ordered that the father refrain from excessive drinking, refrain from physically abusing or threatening the mother or the child, and cooperate with SRS.

2

In September 1981, the father was incarcerated in the Montana State Prison. He testified that he anticipated being paroled in January 1985. The record does not show if that parole has taken place.

SRS filed a petition for temporary custody of the child on June 1, 1982. The mother voluntarily consented to granting SRS temporary custody. In June 1982, the District Court awarded custody for six months to SRS. The mother regained custody in November 1982. Following significant problems in affording proper care for the child, SRS took the child from the mother and placed him in foster care. On February 14, 1983, SRS again filed a petition for temporary custody, which was granted. The boy has remained in foster care since that time.

On August 10, 1983, SRS filed a petition for permanent custody of the child. A hearing was held on December 12 and 13, 1983. The child was 5 years old at that time. The key findings of fact on the part of the District Court are as follows:

> "4. The youth's parents were divorced in 1979. They had lived together sporadically over a five (5) year period ending in September 1981. Both parties drank to excess and . . . [the father] often beat up [the mother] in front of the youth which was very distressing to . . . [the youth]. [The father] . . . worked about twelve months during this period.
>
> "5. [The father] . . . has not supported the child since September, 1981 and has made no attempt to maintain contact with the youth or inquire as to the youth's whereabouts or condition until [the father] . . . was aware that Social and Rehabilitation Services had petitioned the Court to terminate [the father's] . . . rights."

The court concluded that the father had abandoned the child, and that both the mother and the father were unfit parents.

The mother does not dispute the conclusion by the District Court that she was an unfit parent.

There is evidence in the record to indicate that the father had some parenting skills prior to his incarceration, but that these were limited. The record demonstrates that the father had only worked approximately twelve months during the five years preceding the hearing. A social worker testified that she had seen the father and son interact and was reluctant to see the father regain custody. Perhaps most significant was the evidence that the father had not had any contact with the child for approximately three years, but we must keep in mind that the father was incarcerated from September 1981 through 1984.

The father testified that he wrote from prison in an attempt to contact his son and to find out how he was doing. When asked if the father had made any attempt to see his son, the mother testified as follows:

> "Yes. He asked me the names of . . .
> [our son's] foster parents, and I talked
> to Randy Koutnik [an SRS social worker]
> about it, and he asked me not to give out
> that information, and so I wrote him and
> said I was not allowed to give that out."

The record does not disclose whether the District Court had this testimony in mind at the time it concluded that the father had made no attempt to maintain contact with the youth. We are disturbed by the apparent attempt to keep the father from establishing contact with his child.

The father also testified that he would like to have custody of his son after his parole. He testified that while in prison, he had been a trustee and had acquired the skills of a lumberjack. He also testified that he had received his GED, had gone through a course of treatment for alcoholism, and attended Alcoholic Anonymous meetings. The father

4

testified that he is willing to accept family counseling and would like to leave the child with his sister for approximately six months while he is making the transition from prison to school work.

We have also considered the evidence and the findings of the District Court regarding the excessive drinking on the part of the father, his violent conduct towards both the mother and the child, and his failure to support the child.

I

The United States Supreme Court has ruled that the natural parents' right to care and custody of their child is a "fundamental liberty interest" to be protected by fundamentally fair procedures.

> "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Santosky v. Kramer (1982), 455 U.S. 745, 753-54.

The Montana legislature based our Parent-Child Legal Relationship Termination Act of 1981, §§ 41-3-601 through 41-3-612, MCA, on a similar Colorado act. See Matter of C.L.R. (Mont. 1984), 685 P.2d 926, 41 St.Rep. 1436. Construing the Colorado act, a Colorado court has stated that:

> "The termination of parental rights is a decision of paramount gravity, and the state must exercise extreme caution in terminating such rights. . . Hence, strict compliance by the trial court with the appropriate standards for termination of a parent-child relationship is an

5

> absolute necessity. . . A trial court must adequately address and resolve each specific requirement for termination . . . Such detailed resolution of all issues essential to a decree of termination substantially lessens the risk that a parent-child relationship will be severed erroneously." People In Interest Of M.C.C. (Colo.App. 1982), 641 P.2d 306, 308 (citations omitted).

We emphasize that the termination in Montana of a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures. We approve and adopt the Colorado court's rationale that a trial court must adequately address each specific requirement of the statutes prior to termination.

## II

Was there a proper factual and statutory basis for the conclusion by the District Court that the father abandoned his son?

Section 41-3-609(1)(b), MCA, provides that:

> "(1) The court may order a termination of the parent-child legal relationship upon a finding that:
>
> . . .
>
> "(b) The child has been abandoned by his parents as set forth in 41-3-102(3)(d);
> . . ."

Section 41-3-102(3)(d), MCA, states that a parent abandons a child by:

> ". . . leaving him under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or by willfully surrendering physical custody for a period of six months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child. . ."

6

Finding of fact no. 5 by the District Court stated that the father had not supported the child and had made no attempt either to maintain contact or to inquire as to the youth's whereabouts or condition. The record contains testimony that the father asked for the address of the child's foster parents. Unfortunately, the record is not clear as to when the father made the inquiry or when the SRS social worker instructed the mother not to reveal the child's whereabouts to the father. This testimony appears critical to a determination of abandonment since it contradicts the court's finding that the father failed to make any attempt to inquire as to his son's whereabouts or condition.

The record shows that the county attorney filed a motion, asking that the matter be remanded to the District Court for supplemental proceedings. SRS indicated that it expected to present testimony that the father had been in a pre-release center in Butte since January 1984 and that he had made no contact with SRS. Although the motion to remand was denied, this is a further reason for allowing the District Court to reconsider the matter.

On the issue of abandonment, we remand to the District Court for additional findings of fact and conclusions in light of the specific requirements of § 41-3-102(3)(d), MCA.

### III

Was there a basis for concluding that the father's parental rights should be terminated because of a failure to comply with an appropriate treatment plan and for finding that the conduct of the father rendering him unfit was unlikely to change?

Section 41-3-609(1)(c), MCA, provides in pertinent part:

> "(1) The court may order a termination of the parent-child legal relationship upon a finding that:

. . .

> "(c) The child is an adjudicated youth in need of care and both of the following exist:
>
> "(i) An appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>
> "(ii) The conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time."

This Court has consistently ruled that the rights of parents of a youth in need of care cannot be terminated unless the parents have failed to comply with a court-approved treatment plan as required under the statute. In Matter of C.L.R. (Mont. 1984), 685 P.2d 926, 928, 41 St.Rep. 1436, 1439, we stated:

> "[W]e sound a stern warning that this Court will not permit the termination of parental rights without first establishing a treatment plan unless a showing of facts clearly proves the impossibility of any workable plan."

The record does not set forth sufficient facts to conclude whether or not implementation of a treatment plan was attempted or is even feasible in this case. The father argues that he has changed sufficiently so that the District Court should approve an appropriate treatment plan for him. In the event that the District Court changes its conclusion that the father has abandoned the child, then we recognize that the District Court will proceed under § 41-3-609(1)(c)(i), MCA, to determine whether an appropriate treatment plan can be worked out.

8

We reverse the termination order and remand this cause to the District Court for such further proceedings as it deems appropriate in accordance with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9