Justice Dirk Sandefur delivered the Opinion of the Court.
***367 ¶1 Birth mother C.C. appeals the judgment of the Montana Second Judicial District Court, Silver Bow County, terminating her parental rights to her minor children, S.R. and C.R., for failure to comply with a reunification-oriented *699 treatment plan. We restate the dispositive issue as:
Whether the District Court erroneously terminated Mother's parental rights without properly determining whether the children were Indian children?
¶2 We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Appellant C.C. (Mother) and P.R. (Father) are the birth parents of two children (S.R. and C.R.).[1] The Child and Family Services Division of the Montana Department of Public Health and Human Services (Department) first became involved with S.R. and C.R. (then ***368 ages four and ten respectively) under Title 41, ch. 3, MCA, in October 2016 upon information that Mother and Father were using and distributing dangerous drugs (unauthorized prescription drugs, methamphetamine, and marijuana) in and out of the family home.[2] The Department initially worked with the parents on a voluntary basis under a voluntary protection plan but later filed district court petitions seeking emergency protective services (EPS), adjudication of the children as youth in need of care, and temporary legal custody (TLC). The petitions essentially alleged that the children were neglected, or in danger of neglect, based on the parents' illegal drug use and activity, and related concerns regarding the cleanliness of the family home. The Department's supporting affidavits further alleged that, to the best of the Department's knowledge and belief, the children were not Indian children as defined by the federal Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq.
¶4 On December 21, 2016, Mother and Father respectively appeared, personally and through assigned counsel, for the initial show cause hearing.[3] Through counsel, Mother asserted that S.R. and C.R. may be Indian children for the purposes of ICWA based on Mother's belief that she may be eligible for enrollment in the Crow Indian Tribe. Father's counsel similarly asserted that the children may be eligible for tribal enrollment. The Department social worker responded that she had no reason to believe that the children were Indian children due to the parents' lack of cooperation and her assertion that the paternal grandparents had told her that neither parent was eligible for tribal enrollment. The Department thus moved the District Court to proceed on a non-ICWA basis pending further information.
¶5 The parents did not dispute the central allegations of neglect set forth in the Department's petitions. However, as an alternative to proceeding to youth in need of care adjudications and TLC, Mother requested that the court instead grant the Department temporary investigative authority (TIA) pending notice and receipt of conclusive Crow Tribe determination of the enrollment eligibility of the children. The Department opposed the interim TIA proposal, asserting that it ***369 would serve no purpose other than to delay adjudication, TLC, and imposition of reunification-oriented treatment plans. The Department social worker nonetheless assured the court that she would meet with Mother after the hearing to discuss Mother's asserted Crow Tribe affiliation and then make inquiry as appropriate. The District Court thus rejected the interim TIA proposal and instead elected to proceed with adjudications as requested by the Department. By subsequent stipulation, the court granted the Department EPS, adjudicated the children as youth in need of care as defined by § 41-3-102(34), MCA, and granted the Department TLC for a period of six months. At the subsequent dispositional hearing on February 8, 2017, the court adopted and imposed Department-proposed treatment plans for the parents.
¶6 Four months later, on June 12, 2017, the Department petitioned the court to extend *700 TLC for an additional six months to allow the parents more time to work on their treatment plans. Inter alia , and without reference to what efforts, if any, the Department had made to obtain determinations of enrollment eligibility from the Crow Tribe, the Department's supporting affidavit again asserted that the children were not Indian children to the best of its knowledge. The District Court subsequently granted the requested extension of TLC at hearing on July 19, 2017.
¶7 In November 2017, the Department petitioned the court for termination of the parents' respective parental rights and permanent legal custody based on alleged treatment plan failure. At the termination hearing on February 28, 2018, the District Court admitted into evidence a March 2017 letter from the Crow Tribe informing the Department that the child C.R. was neither enrolled nor enrollable in the Tribe based on the fact that neither parent was enrolled or enrollable. The letter did not reference S.R. The Department social worker testified that the Department had received a separate letter from the Crow Tribe stating that S.R. was similarly not enrolled or eligible for tribal enrollment. However, the Department did not offer the purported letter into evidence at the hearing. The social worker explained that she did not bring the letter regarding S.R. to court because she thought the letter regarding C.R. would suffice since the children had the same parents.
¶8 On the evidence presented at hearing, the District Court issued findings of fact, conclusions of law, and judgments terminating the parents' respective parental rights to the children due to treatment plan failure and thus granted the Department permanent legal custody. In pertinent part, the written judgments indicated that the ***370 court terminated the parents' respective parental rights based on the non-ICWA standard of proof (clear and convincing evidence) specified by § 41-3-609(1), MCA. The court's findings, conclusions, and judgments did not reference ICWA or include any finding regarding the tribal enrollment eligibility of either child. Mother timely appeals.
STANDARD OF REVIEW
¶9 We review parental rights terminations under Title 41, ch. 3, MCA, for an abuse of discretion based on compliance with applicable Montana statutory and ICWA standards. In re L.D. , 2018 MT 60, ¶ 10, 391 Mont. 33, 414 P.3d 768 ; In re D.B. , 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. An abuse of discretion occurs if a court exercises discretion based on a clearly erroneous finding of fact, erroneous conclusion of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. In re D.E. , 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586 ; D.B. , ¶¶ 16-18. Findings of fact are clearly erroneous only if not supported by substantial evidence, the lower court misapprehended the effect of the evidence, or upon our review of the record we have a definite and firm conviction that the district court was mistaken. L.D. , ¶ 10 ; In re D.H. , 2001 MT 200, ¶ 14, 306 Mont. 278, 33 P.3d 616. We review conclusions of law de novo for correctness. In re M.W. , 2004 MT 301, ¶ 16, 323 Mont. 433, 102 P.3d 6.
DISCUSSION
¶10 Whether the District Court erroneously terminated Mother's parental rights without properly determining whether the children were Indian children?
¶11 The United States Congress enacted ICWA in 1978 to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families. ..." 25 U.S.C. § 1902. ICWA manifests the Congressional determination and policy that the preservation and protection of the relationship between Indian children and related Indian tribes is in the best interests of the children and essential to the continued existence of the tribes. Miss. Band of Choctaw Indians v. Holyfield , 490 U.S. 30, 49-53, 109 S.Ct. 1597, 1609-11, 104 L.Ed.2d 29 (1989) (noting that ICWA vests Indian tribes with a right and interest in related Indian children "distinct from but on a parity with the interest of the parents"). See also 25 U.S.C. § 1901(5) (states "have often failed to recognize the essential tribal relations of Indian *701 people and the cultural and social standards ***371 prevailing in Indian communities and families"); 25 U.S.C. § 1902 ; 25 C.F.R. § 23.3. In furtherance of this clearly stated federal policy, ICWA imposes heightened federal standards for the removal of Indian children from Indian families. See , e.g. , 25 U.S.C. §§ 1902, 1911, and 1912(d) - (f) (policy, tribal jurisdiction and right of intervention in state court proceedings, and over-arching requirements for active remedial efforts, qualified expert testimony, and proof beyond a reasonable doubt). ICWA broadly applies to state law "child custody proceedings," as defined by 25 U.S.C. § 1903(1), involving "Indian child[ren]," as defined by 25 U.S.C. § 1903(3) - (8). See 25 U.S.C. § 1912.
¶12 Like all parents, Indian parents have fundamental federal and Montana constitutional rights in the custody and care of their children. In re A.R.A. , 277 Mont. 66, 70-71, 919 P.2d 388, 391 (1996) ; In re Guardianship of Doney , 174 Mont. 282, 286, 570 P.2d 575, 577 (1977) ; Troxel v. Granville , 530 U.S. 57, 65-67, 120 S.Ct. 2054, 2059-60, 147 L.Ed.2d 49 (2000) ; Stanley v. Ill. , 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972). Regardless of Montana's compelling interest in protecting children from abuse and neglect,[4] state and federal constitutional rights to due process of law at a minimum require that state legal processes for suspension or termination of parental rights be fundamentally fair and that states substantially comply with all applicable state and federal statutory requirements for suspension or termination of parental rights. See In re M.A.E. , 1999 MT 341, ¶ 18, 297 Mont. 434, 991 P.2d 972 ; In re J.N. , 1999 MT 64, ¶ 12, 293 Mont. 524, 977 P.2d 317 ; In re R.B. , 217 Mont. 99, 103, 703 P.2d 846, 848 (1985). Thus, in suspending or terminating parental rights based on abuse, neglect, or abandonment as defined by §§ 41-3-102(1) and (3), MCA, district courts must substantially comply, and make sufficient findings of fact manifesting compliance, with applicable requirements of Title 41, ch. 3, MCA, and ICWA. L.D. , ¶ 13 ; D.B. , ¶¶ 17-18 ; In re J.V. , 2003 MT 68, ¶ 7, 314 Mont. 487, 67 P.3d 242 ; M.A.E. , ¶ 18 ; J.N. , ¶ 12 ; R.B. , 217 Mont. at 103, 703 P.2d at 848.
¶13 Whether ICWA applies to a proceeding under Title 41, ch. 3, MCA, depends on whether a child is an Indian child. See 25 U.S.C. § 1912(a). ICWA defines an "Indian child" as an unmarried person under the age of eighteen who is either "a member of an Indian tribe" or "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). See also 25 U.S.C. § 1903(3), (5) (defining related terms "Indian" and "Indian child's ***372 tribe"). The threshold determination of whether a child is an Indian child is equally critical and determinative of the governing legal standards for temporary "foster care placement" and termination of parental rights proceedings. See 25 U.S.C. §§ 1903(1)(i)-(ii) and 1912(a) ; 25 C.F.R. § 23.2 ("foster care placement" and termination proceedings are separate "proceedings" for purposes of ICWA).
¶14 Emergency removals,[5] "foster care placement" proceedings, and termination proceedings are distinct "proceedings" under ICWA. See 25 U.S.C. §§ 1903(1)(i)-(ii), 1912(a), 1922 ; 25 C.F.R. § 23.2. A "foster care placement" is a temporary court-ordered placement, or proceeding therefor, of "an Indian child [away] from [a] parent or Indian custodian ... where the parent or Indian custodian cannot have the child returned upon demand. ..." 25 U.S.C. §§ 1903(1)(i), 1912(e) ; 25 C.F.R. § 23.2 (defining "child-custody proceeding"). Except where not involving a temporary removal and *702 placement of the child, proceedings under Title 41, ch. 3, MCA, for EPS,[6] TIA,[7] and TLC[8] are "foster care placement" proceedings as defined by 25 U.S.C. § 1903(1)(i) and referenced in 25 U.S.C. § 1912. See 25 U.S.C. §§ 1912(a), (d) - (f) ; In re H.T. , 2015 MT 41, ¶¶ 36-38, 378 Mont. 206, 343 P.3d 159.[9] See also §§ 41-3-109, -301(7), -422(5)(b), (6)(a), -423(2), -427(1), (2), -432, -433, -437(2), (8), -438(3)(f), -442, MCA ; In re A.K.H. , 502 N.W.2d 790, 792-93 (Minn. App. 1993) (temporary placement of child in physical custody of a person not a ***373 parent or Indian custodian is a "temporary placement in ... the home of a guardian or conservator" as referenced in 25 U.S.C. § 1903(1)(i) -state law definitions of guardian or conservator not determinative).
¶15 If and when the court "has reason to know that an Indian child is involved" in an EPS, TIA, or TLC proceeding not involving a temporary removal and placement of the child, the Department must immediately, by registered mail with return receipt requested, "notify ... the Indian child's tribe" of "the pending proceedings and of [the tribe's] right of intervention." 25 U.S.C. § 1912(a). "If the identity or location of ... the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to ... the tribe." 25 U.S.C. § 1912(a). The court may not thereafter proceed with any "foster care placement ... proceeding ... until at least ten days after receipt of notice by ... the tribe or the Secretary ...." 25 U.S.C. § 1912(a) (emphasis added).[10] However, ICWA does not prohibit district courts from continuing a pre-petition emergency removal and placement by the Department under § 41-3-301, MCA, pending tribal notice and determination of a child's tribal enrollment eligibility. See 25 U.S.C. §§ 1903(1), 1912, 1915, 1922 ; 25 C.F.R. § 23.2. See also H.T. , ¶¶ 36-38.
¶16 Unless a reason is manifest on the face of the Department's ***374 petition or supporting affidavit(s), the initial show cause hearing is generally the first occasion for the court to have "reason to know that an Indian child is involved" in an EPS, TIA, or TLC proceeding. See §§ 41-3-109, -301(7), -422(1)(a), -427(4), -432, -433, -437(1), 438(3)(f), -442, MCA. At the "commencement" of the show cause hearing, the court "must ask each participant" in the proceeding "whether the participant knows or has reason to know that the child is an Indian child." 25 C.F.R. § 23.107(a).[11] See also *703 25 U.S.C. § 1912(a) ("[n]o foster care placement ... proceeding shall be held until at least ten days after receipt of notice by the ... tribe or the Secretary" of the Interior). The court must make this inquiry "on the record" and require record responses from "each participant ." 25 C.F.R. § 23.107(a) (emphasis added). For purposes of 25 U.S.C. § 1912, a "reason to know that an Indian child is involved" is no more than awareness of a reasonable basis upon which to believe that a child may be an Indian child. In re Gerardo , 119 Cal.App.4th 988, 14 Cal.Rptr.3d 798, 802 (2004) ; In re Kahlen , 233 Cal.App.3d 1414, 285 Cal.Rptr. 507, 511 (1991). See also 25 C.F.R. §§ 23.107(a), (c), -108(a). Accord In re Joseph P. , 140 Cal.App.4th 1524, 45 Cal.Rptr.3d 591, 595-96 (2006).[12] For example, a court "has reason to know that an Indian child is involved" if, inter alia , "[a]ny participant" or "officer of the court involved in the proceeding" either "informs the court that the child is an Indian child" or that the person has "information indicating that the child is an Indian child." 25 C.F.R. § 23.107(c).
¶17 When there is reason to know that an EPS, TIA, or TLC proceeding not involving a temporary removal and placement of the child may involve an Indian child, "the court must ensure that" the Department "promptly sends notice" of the proceeding to "[e]ach tribe" in which the child may be eligible for enrollment or the Secretary in ***375 accordance with 25 C.F.R. § 23.111. 25 C.F.R. §§ 23.111(a)-(c).[13] See also 25 U.S.C. § 1912(a). The court must further "ensure" that the Department promptly files a copy of the notice(s) "with the court together with any return receipts or other proof of service." 25 C.F.R. § 23.111(a)(2). When it "does not have sufficient evidence" to conclusively confirm or dispel a reason to know that a child may be an Indian child, the court must:
[c]onfirm, by way of a report, declaration, or testimony included in the record that the [Department ] used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership).
25 C.F.R. § 23.107(b)(1) (emphasis added). When there is reason to know that an EPS, TIA, or TLC proceeding not involving a temporary removal and placement of the child may involve an Indian child, the court may proceed only after compliance with the tribal notice and enrollment eligibility requirements of 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(a) and 23.111(a)-(c). In any event, the court must make findings of fact sufficient to manifest compliance with 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(a), (b)(1), and 23.111(a)-(c). See L.D. , ¶ 13 ; D.B. , ¶¶ 17-18 ; J.V. , ¶ 7 ; M.A.E. , ¶ 18 ; J.N. , ¶ 12 ; R.B. , 217 Mont. at 103, 703 P.2d at 848. If unable to obtain a conclusive tribal determination of a child's tribal enrollment eligibility upon compliance with U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(a), (b)(1), and 23.111(a)-(c), the court must thereafter "[t]reat the child as an Indian child, unless and until " it conclusively determines "on the record that the child" is not an ICWA-defined Indian child. 25 C.F.R. § 23.107(b)(2) (emphasis added).
¶18 Whether a child is eligible for tribal membership and is thus an Indian child is a question of fact for exclusive determination by the Indian tribe(s) in regard to which the court has reason to know the child may be related. L.D. , ¶ 14 ; 25 C.F.R. § 23.108(b). A tribal determination of membership eligibility is conclusive as a matter of law. L.D. , ¶ 14 ; 25 C.F.R. § 23.108(b). A district court may not independently determine whether a child is eligible for membership *704 in an Indian tribe. L.D. , ¶ 14 ; 25 C.F.R. § 23.108(b). When there is reason to know that a child may be eligible for tribal enrollment, it is the Department's duty and burden to diligently investigate, provide formal ***376 notice to the suspected Indian tribes or the Secretary of the Interior, and obtain a conclusive tribal determination of a child's eligibility for tribal membership. See 25 U.S.C. § 1912(a) ; 25 C.F.R. §§ 23.2, 23.107(a), 23.111(a)-(c), 23.112(a), (b)(2). However, in that circumstance, it is ultimately the duty of district courts to demand, ensure, and manifest, through sufficient findings of fact, Department compliance with all applicable ICWA tribal notice and enrollment eligibility requirements. See L.D. , ¶¶ 15-17 ; 25 U.S.C. § 1912(a) ; 25 C.F.R. §§ 23.107(b)(1), 23.111(a)-(c). Proceeding without doing so is an abuse of discretion. See , e.g. , In re L.A.G. , 2018 MT 255, ¶¶ 11-29, 393 Mont. 146, 429 P.3d 629 ; D.E. , ¶¶ 22-38 ; L.D. , ¶¶ 13-17 ; In re A.G. , 2005 MT 81, ¶¶ 14-18, 326 Mont. 403, 109 P.3d 756.
¶19 Here, Mother asserts that the District Court abused its discretion in failing to timely and properly confirm or dispel a reason to know that S.R. and C.R. were ICWA-defined Indian children. The Department contrarily asserts that the court did not have sufficient "reason to know" that the children were Indian children and that, even if it did, any resulting non-compliance with ICWA was harmless error in any event.
¶20 The record of the initial show cause hearing on December 21, 2016, fairly manifests that the parents separately asserted their respective beliefs that the children may qualify for enrollment in the Crow Tribe through their mother. The record further fairly reflects that the parents accordingly asserted that the Department should thus give notice and obtain a determinative response from the Tribe prior to the case proceeding beyond a grant of TIA. While the parents' assertions were not supported by evidentiary fact and were less than certain or unequivocal, the standard for triggering ICWA's tribal notice and enrollment eligibility determination requirements is low-the court must merely have a "reason to know," i.e., a reasonable basis upon which to believe that a child may be an Indian child. Gerardo , 14 Cal.Rptr.3d at 802 ; Kahlen , 285 Cal.Rptr. at 511. See also 25 U.S.C. § 1912(a) ; 25 C.F.R. §§ 23.107(a), (c), 23.108(a). What constitutes a reasonable basis upon which to believe that a child may be eligible for tribal enrollment is a factual matter that will vary based on the particular record in each case.
¶21 Contrary to the Department's assertion and the apparent corresponding view of the District Court, the "reason to know" standard does not necessarily require an evidentiary showing, and certainly not by the parents, that a child or parent may be eligible for tribal membership. See 25 U.S.C. § 1912(a) ; 25 C.F.R. §§ 23.107-08.
***377 Nor does ICWA require that an assertion of potential tribal eligibility be certain. Gerardo , 14 Cal.Rptr.3d at 802 ; Kahlen , 285 Cal.Rptr. at 511. See also 25 C.F.R. §§ 23.107(a), (c), -108(a). Any more stringent construction as suggested by the State would defeat ICWA's manifest purpose and command. Certainly, a "reason to know" is a low standard, but not an unlimited one. In re Jeremiah G. , 172 Cal.App.4th 1514, 92 Cal.Rptr.3d 203, 207-08 (2009) ; In re Z.H. , 740 N.W.2d 648, 653-54 (Iowa App. 2007). A "reason to know" requires something more than a bare, vague, or equivocal assertion of possible Indian ancestry without reference to any identified Indian ancestors with a reasonably suspected tribal connection. See Jeremiah G. , 92 Cal.Rptr.3d at 207-08 ; Z.H. , 740 N.W.2d at 653-54. Pursuant to 25 C.F.R. § 23.107(c)(1), Mother's asserted belief that she may be eligible for enrollment in the Crow Tribe was minimally sufficient to constitute a reason to know that the children were Indian children under the circumstances of this case.
¶22 We are further troubled by the Department's apparent view that it has no affirmative duty to make further inquiry or provide tribal notice and inquiry when parents are not cooperative. Lack of parental cooperation is immaterial, is not a basis for equitable waiver or estoppel, and does not otherwise relieve state agencies and courts of the duty to comply with ICWA requirements. Kahlen , 285 Cal.Rptr. at 512. ICWA vests Indian children and related Indian tribes *705 with a federal right, independent of but on par with the right of Indian parents, to specified tribal notice and eligibility determinations regardless of the conduct or disregard of the parents. Miss. Band of Choctaw Indians , 490 U.S. at 49-53, 109 S.Ct. at 1609-11 ; Kahlen , 285 Cal.Rptr. at 512. The practical difficulty or inability of a state agency to identify the correct tribe or substantiate an assertion of requisite Indian ancestry does not relieve the agency of its duty to comply with ICWA requirements. See Kahlen , 285 Cal.Rptr. at 512.
¶23 In addition to the parents' assertions of possible Crow Tribe eligibility at the initial show cause hearing in this case, the considerable record colloquy between court and counsel that followed further manifests a reasonable basis upon which to believe that the children may be Indian children, regardless of whether the reason was not uncertain or based on an affirmative evidentiary showing. In disregard of that reason, the court failed to: (1) ensure that the Department promptly noticed and made inquiry of the Crow Tribe; (2) ensure that the Department then either obtained conclusive tribal enrollment eligibility determinations or made an affirmative record showing of why and on what basis it was unable to do so on due ***378 diligence; and (3) treat the children as Indian children pending tribal notice and determination of enrollment eligibility. We hold that the District Court abused its discretion in proceeding on from the show cause hearing in non-compliance with the requirements of 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(b) and 23.108.
¶24 Turning to the termination stage of the proceedings, Mother asserts that the District Court further erred by terminating her parental rights to S.R. under non-ICWA standards without sufficient evidence of the child's ineligibility for tribal enrollment and an associated finding of fact. The tribal notice and enrollment eligibility requirements of 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(b) and 23.108 apply equally to preliminary "foster care placement" and termination of parental rights proceedings. See 25 U.S.C. §§ 1903(1)(i)-(ii), 1912(a) ; 25 C.F.R. § 23.2(2). Within that framework, Mother correctly asserts that the Department failed to present and offer into evidence a purportedly in-hand conclusive determination of S.R.'s tribal enrollment ineligibility from the Crow Tribe. Mother further correctly asserts that the District Court failed to make any finding of fact manifesting the Department's compliance with the tribal notice and enrollment eligibility requirements of 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(b) and 23.108.
¶25 However, while district courts may not substitute their judgment for a conclusive tribal determination, L.D. , ¶¶ 14-17 ; 25 C.F.R. § 23.108(b); they may, in determining whether a child is an Indian child, nonetheless "rely on facts or documentation indicating a Tribal determination of membership or eligibility." 25 C.F.R. § 23.108(c) (emphasis added). Here, regardless of the Department's failure to offer into evidence a purported in-hand tribal eligibility determination for S.R. and the court's concomitant failure to make any finding of fact regarding the tribal eligibility or Indian status of either child, prominent in the termination hearing record was a conclusive Crow Tribe determination that C.R. was not eligible for tribal membership. Based on that determination and the undisputed record fact that S.R. and C.R. were siblings with the same birth parents, the record clearly manifests that, based on a conclusive tribal determination, neither child was an ICWA-defined Indian child. Thus, the District Court's failure to make a sufficient finding of fact regarding S.R.'s ineligibility for tribal enrollment did not substantially prejudice Mother under the circumstances of this case.
¶26 Harmless error is not reversible error. H.T. , ¶ 10 ; In re A.N. , 2000 MT 35, ¶¶ 39, 55, 298 Mont. 237, 995 P.2d 427. See also ***379 § 25-11-102(1), MCA (standard for new trial); M. R. Civ. P. 61 ("errors and defects" not affecting a "party's substantial rights" are harmless); M. R. Evid. 103(a). Procedural or substantive error in civil proceedings is generally reversible only if it materially prejudiced the outcome of the proceeding. See H.T. , ¶ 10 ; A.N. , ¶¶ 39, 55 ; M. R. Civ. P. 61. However, otherwise harmless technical non-compliance with an express statutory requirement affecting a fundamental *706 constitutional liberty interest may nonetheless be reversible if strict compliance is necessary to ensure a fundamentally fair process. See L.A.G. , ¶¶ 13-19 (required ICWA "Indian child" determination); D.E. , ¶¶ 22-38 (required ICWA "Indian child" determination); L.D. , ¶¶ 11-17 (required ICWA "Indian child" determination); In re D.L.B. , 2017 MT 106, ¶ 10, 387 Mont. 323, 394 P.3d 169 (involuntary mental health commitment criteria); In re R.M.T. , 2011 MT 164, ¶ 27, 361 Mont. 159, 256 P.3d 935 (parental rights termination criteria); In re J.C. , 2008 MT 127, ¶¶ 37-55, 343 Mont. 30, 183 P.3d 22 (TLC proceedings) ; D.B. , ¶¶ 17-18 (termination proceeding findings).
¶27 Here, the termination hearing record manifests that, based on a conclusive tribal determination, S.R. and C.R. were not ICWA-defined Indian children. The District Court's initial failure to comply with 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(b) and 23.108 was thus harmless. The court's subsequent failure, upon terminating Mother's parental rights, to make any finding regarding S.R.'s ineligibility for tribal enrollment was likewise at most harmless error under the facts and circumstances of this case.
CONCLUSION
¶28 We hold that the District Court abused its discretion in proceeding on from the initial show cause hearing in non-compliance with the requirements of 25 U.S.C. § 1912(a) and 25 C.F.R. §§ 23.107(b) and 23.108. However, based on a subsequent and ultimately conclusive tribal determination that neither child was eligible for tribal enrollment, we hold that the abuse of discretion was harmless. We further hold that the District Court's subsequent failure, upon terminating Mother's parental rights, to make any finding of fact regarding S.R.'s ineligibility for tribal enrollment was at most harmless error under the facts and circumstances of this case.
¶29 Affirmed.
We concur:
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
Justice Laurie McKinnon, specially concurring.
¶30 I disagree with certain aspects of the Court's legal analysis as well ***380 as its application of law to the facts of this case. I specially concur, however, because I agree with the Court's ultimate decision to affirm the District Court. Portions of the Court's legal analysis are unclear and overlook the fact that the interaction between ICWA and Montana's child abuse and neglect statutes, Title 41, chapter 3, MCA (Chapter 3), depends greatly on the specific facts of each case. I further disagree with the Court's application of the law in this case, specifically its unwarranted criticism of the Department's actions.
¶31 While not directly at issue here, the Court's general statements about which Montana proceedings constitute "emergency removals" and "foster care placement proceedings" under ICWA are confusing and may lead to misunderstanding. See Opinion, ¶ 14. I therefore feel the need to clarify when ICWA's emergency removal exception applies to child abuse and neglect proceedings in Montana before addressing the specific facts of this case. The Court states that "[e]xcept where not involving a temporary removal and placement of the child," an EPS proceeding is a " 'foster care placement' proceeding." Opinion, ¶ 14. The Court then clarifies in a footnote that "[a]n emergency removal pursuant to § 41-3-301, MCA,"-the statute entitled, "Emergency protective service," or "EPS"-"is not an ICWA-defined 'child custody proceeding' subject to ICWA's pre-hearing tribal notice and kinship placement requirements." Opinion, ¶ 14 n.9.
¶32 I agree with the Court's conclusion that EPS removals pursuant to § 41-3-301, MCA, are emergency removals that ICWA shall not be construed to prevent. See 25 U.S.C. § 1922. The Court's explanation is confusing, however, because the term EPS, and the various Montana statutes explaining EPS, encompass actions that are both emergency removals and foster care placement proceedings under ICWA. The point at which *707 an EPS removal pursuant to § 41-3-301(1), MCA, ceases to constitute an emergency removal under § 1922 varies from case-to-case. Once a foster care placement proceeding commences and the court knows or has reason to know that a child is an Indian child, the court should ensure the Department provides notice to the tribe and then wait the obligatory ten days from when the tribe received the notice before holding a foster care placement proceeding. 25 U.S.C. § 1912(a). That ICWA requirement may not be construed, however, to limit the court's ability to make interim decisions to provide for a child's care on an emergency basis. 25 U.S.C. § 1922.
¶33 Chapter 3 contains Montana's child abuse and neglect statutes. Relevant to the discussion here, Chapter 3 includes part 3, "Protective Care," and part 4, "Abuse or Neglect Proceedings." In many cases, the Department utilizes part 3's protective care statutes as a precursor to ***381 part 4's abuse or neglect proceeding statutes. Part 3 provides for the emergency removal of a child in danger: if a Department social worker "has reason to believe any child is in immediate or apparent danger of harm," she "may immediately remove the child and place the child in a protective facility." Section 41-3-301(1), MCA.
¶34 Those types of emergency removals are not limited by ICWA's notice and kinship placement requirements- § 1922 provides, "Nothing in [ICWA] shall be construed to prevent the emergency removal of an Indian child ... from his parent ... or the emergency placement of such child in a foster home ... under applicable State law, in order to prevent imminent physical damage or harm to the child." Accordingly, ICWA shall not be construed to prevent the emergency removal of a child in Montana under § 41-3-301(1), MCA.
¶35 Within five working days of the emergency removal, the county attorney must file an abuse and neglect petition. Section 41-3-301(6), MCA. In many cases, a foster care placement proceeding, as defined by ICWA, will begin once the county attorney files that petition: "Proceedings under [Chapter 3] must be initiated by the filing of a petition. A petition may request ... immediate protection and emergency protective services, as provided in 41-3-427." Section 41-3-422(1)(a)(i), MCA (emphasis added). If the circumstances of the case meet the definition of a "foster care placement proceeding" under ICWA, and if the court knows or has reason to know that an Indian child is involved in the proceeding, the case is subject to § 1912 's notice requirement-the court must ensure the Department notifies the child's tribe of the pending proceedings and wait the requisite ten days.
¶36 However, § 1922 's emergency removal exception does not necessarily end the moment the county attorney files a petition initiating a foster care placement proceeding. Section 1922 's emergency removal exception terminates "when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child." 25 U.S.C. § 1922. Shortly after the Department removes a child on an emergency basis pursuant to § 41-3-301(1), MCA, the county attorney must file a petition for immediate protection and EPS. Section 41-3-301(6), MCA.
¶37 In many cases, the emergency removal and placement will still be necessary at that time to prevent imminent physical damage or harm to the child. ICWA shall not be construed to limit the court's ability to continue to protect the child on an emergency basis after the county attorney initiates a foster care placement proceeding by filing a petition for immediate protection and EPS. The court may make decisions to ensure the child is protected and cared for after the ***382 emergency removal or placement until the removal or placement is no longer necessary to prevent imminent physical damage or harm to the child. See 25 U.S.C. § 1922. That moment will be different in each case and is, by definition, not tied to the commencement of a foster care placement proceeding. ICWA does not limit the court's ability to make decisions while the removal or placement is still necessary to prevent imminent damage or harm to the child and the Opinion, ¶¶ 14-15, creates confusion by failing to clearly identify the court's authority after an emergency removal. *708 ¶38 Having clarified the way ICWA should apply in EPS removals in Montana, I turn to the facts of this case and take issue with how the Court applied the law. On October 11, 2016, the Department received a report expressing concerns with the parents' drug use and distribution, lack of child supervision, and the cleanliness of the family's home. The Department struggled to contact the parents for multiple days, and eventually spoke with them on October 18, 2016, after visiting S.R. at school. At that time, Mother and Father agreed to work with the Department on a voluntary basis and they both signed a protection plan. The Department placed the children in their paternal grandparents' care. Thereafter, the Department struggled to contact the parents and Father's drug test came back positive for amphetamines and methamphetamines. The Department tested the children's hair follicles for substances. S.R. tested negative but C.R. tested positive for opiates, methamphetamine, morphine, and amphetamine.
¶39 On November 14, 2016, the Department filed a petition for EPS, adjudication of the children as youths in need of care (YINC), and TLC based on concerns about drug use, concerns that the parents were selling drugs out of the family home, and lack of contact with the Department to work on the voluntary protection plan. The court continued the show cause hearing once at Father's request but eventually held it on December 21, 2016. At the hearing, the parents stipulated to the children being found YINC but suggested TIA was more appropriate than TLC. The Department maintained it needed TLC to ensure the children's safety. The Department's social worker (Burk) testified about all of the events leading up to its request for TLC. Burk stated that TIA was inappropriate in this case because the Department did not need an investigatory period-it had already obtained enough information to demonstrate the children's circumstances required TLC.
¶40 The Department asked Burk, "Do you feel that ... return of the children to the home would create a substantial risk of harm to the ***383 children?" She responded, "I do." Counsel further inquired, "[D]o you believe that dismissal of the petition would create a substantial risk of harm to the children or would be a detriment to their physical or psychological well-being?" Burk again responded, "I do."
¶41 The court first became aware of the possibility that the children could be Indian children when Father's counsel cross-examined Burk. He asked, "Do you know whether either of the parents have any Indian descent?" Burk responded that she had not yet asked the parents because of her inability to contact them but that the children's paternal grandparents indicated the children did not. When Mother's counsel questioned Burk, she inquired, "[A]re you aware that [Mother] is eligible for enrollment in the Crow Tribe?" Burk responded, "I am not due to not being able to have that type of conversation with her," and then further explained her problems communicating with Mother. Burk further opined that TIA would be inappropriate in this case because it would not obligate the parents to follow through on requested improvements, whereas TLC would.
¶42 Mother's counsel subsequently argued that, because the children may be Indian children, ICWA may apply to the case and therefore the Department must provide active, not reasonable, efforts. Mother's counsel indicated Mother would stipulate to TIA in order to give the Department more time to investigate and follow-up on certain things. The Court asked counsel whether Mother was asserting that ICWA applied in this case and counsel responded, "Yes, Your Honor. [Mother is] not enrolled in the Crow Tribe but she's eligible for enrollment. So, again, I think that there's always a process when ICWA possibly applies, when the Department investigates and confers with the Tribe, and I think that step needs to be taken." After asking more questions of the Department, the Court concluded, "So the Department has not made efforts to determine whether or not ICWA applies at this point given that lack of communication, we haven't sent notices to the Tribe or Tribes at issue. That's a matter that would be resolved down the road if, in fact, the parents provided us with information or even an allegation that ICWA applies." Father's counsel stated that *709 the children were potentially eligible for tribal enrollment based on Mother's ancestry and that the Tribe needed to be notified.
¶43 The court summarized the evidence presented at the proceeding and stated it had significant concerns about drug presence, drug use, and possible drug distribution in the family home. The court concluded the environment was unsafe and unhealthy for the children and that, at that point, there was no need to further investigate the situation but, instead, the court needed to act to protect the children and work ***384 with the parents to remedy the situation. The court adjudicated the children as YINC. It decided to not apply the ICWA standard at that time because there was no evidence that the children were enrolled or enrollable, noting that the only argument made at the show cause hearing was that Mother may be enrollable but was not enrolled. The court stated, "We're going to need more information to see the connection that the children have with the Tribe and whether or not the connection is of a sufficient degree that the Tribe actually tells us they are enrolled or enrollable." The court instructed that, if it granted TLC, "examination of the ICWA question is going to be a priority concern. There's been a suggestion that ICWA's applicable, and if, in fact, we actually have evidence of that, then we're probably going to have to reconvene .... At the present time, there's no evidence that that's the case with respect to these children."
¶44 The court then asked the Department if it wanted to proceed with a disposition hearing, the Department responded that it did, and neither parent requested the court continue the disposition pending ICWA's notice requirement. Instead, the parents asserted that TIA was more appropriate pending tribal notice. Burk testified again, stating that the Department would develop treatment plans and that, regarding the ICWA issue, she would send notifications to the Tribe that day. The court ultimately granted the Department TLC for six months and specifically found that dismissing the petition at that time would "create an unreasonable risk of continued abuse or neglect of the children." The court stated, "With respect to the ICWA issue, ... the parents are obligated under statute to talk with or to work with the Department, to provide information about the children's backgrounds .... This includes any information that would relate to the children's Indian heritage and their enrollment in or enrollability in a Native American Tribe." The court directed the parents to "specifically cooperate and provide to the Department information about what Tribe or Tribes are at issue, what the status of the children are as far as the parents' know, any contact information the parents may have with representatives of the Tribe or Tribes, and any other corollary information that will assist in that determination." The court concluded, "I do want those ICWA investigation ... efforts to be part of the Department's immediate exercise of temporary custody over the children." Following the hearing, the Department sent notice of the pending case to the Crow Tribe. The Tribe received the notice and, in March 2017, notified the Department that the children were not eligible for enrollment.
¶45 The Court concludes the District Court abused its discretion when ***385 it did not comply with ICWA's notice requirements before proceeding on from the show cause hearing. Opinion, ¶ 23. I agree with the Court that as soon as the parents made the District Court aware of the possibility that the children were Indian children, the court needed to ensure that the Department provided notice to the Tribe as required by § 1912(a). However, the court was within its discretion to order TLC in the interim-it found, based on substantial credible evidence, that returning the children to the parents would subject them to an unreasonable risk of continued abuse or neglect. ICWA cannot be construed as to prevent the court's authority on an emergency basis, and I believe the Court errs when it finds the District Court abused its discretion by ordering TLC at the show cause hearing. The District Court was not precluded from making decisions to ensure the children remained safe, even if the Tribe had not yet received notice. See 25 U.S.C. § 1922.
¶46 I am further troubled by the Court's unnecessary criticism of the Department's actions. First, the Court criticizes the Department for not giving enough consideration *710 to whether there was reason to know the children were Indian children at the show cause hearing. Opinion, ¶¶ 20-21. Review of the show cause hearing transcript, however, demonstrates that both the Department and the District Court thoroughly considered whether ICWA applied in these proceedings. The District Court further emphasized that the Department's first priority needed to be an ICWA inquiry, and the Department assured the District Court that it would be. Second, the Court views the Department's actions as perpetuating an attitude that it had "no affirmative duty to make further inquiry or provide tribal notice and inquiry when parents are not cooperative." Opinion, ¶ 22. Review of the record however, does not support the Court's recitation of the facts-the Department expressed frustration with the parents' lack of cooperation but nonetheless affirmatively stated at the show cause hearing that it would send the Tribe notices that day, and it did so. Child abuse and neglect cases present sensitive, emotionally-charged, and complicated issues. This Court should not be unnecessarily critical of the Department's actions when the record demonstrates the Department's respect for and consideration of the applicable laws.
¶47 While identifying errors that I do not, the Court ultimately affirms the District Court on the basis that its errors were harmless. I accordingly agree with the Court's disposition and specially concur to voice my concerns as stated above.

The children were the subjects of separately filed youth in need of care proceedings conducted in tandem in district court which are consolidated here on appeal.

The Department was previously involved with this family on a voluntary basis in 2012-13 upon the parents' arrests for criminal possession and distribution of dangerous drugs (unauthorized prescription medication, methamphetamine, and marijuana).

The matter came on for initial show cause hearing on December 7, 2016, which was reset to December 21st when Father failed to appear due to illness.

See § 41-3-101, MCA (declaration of state policy).

An emergency removal is the removal of a child from a parent or Indian custodian for temporary protective placement "to prevent imminent physical damage or harm to the child" pending initiation of ICWA-defined "child custody proceeding[s]." See 25 U.S.C. § 1922 ; State ex rel. Juvenile Dep't of Multnomah Cty. v. Charles , 70 Or.App. 10, 688 P.2d 1354, 1358 (1984) (express allowance by 25 U.S.C. § 1922 of emergency removals and placements of reservation-resident children located off-reservation implicitly allows similar emergency removal and placement of non-reservation-resident Indian children). See also 25 C.F.R. § 23.2 (defining "emergency proceeding"); § 41-3-301(1), MCA (emergency removals and placement pending hearing).

See §§ 41-3-422(1)(a)(i), -427, -432, MCA.

See §§ 41-3-422(1)(a)(ii), -432, -433, MCA.

See §§ 41-3-422(1)(a)(iii), -432, -442, MCA.

An emergency removal pursuant to § 41-3-301, MCA, is not an ICWA-defined "child custody proceeding" subject to ICWA's pre-hearing tribal notice and kinship placement requirements. See 25 U.S.C. §§ 1903(1), 1912, 1915, 1922 ; 25 C.F.R. § 23.2. Accord H.T. , ¶¶ 36-38.

See also 25 C.F.R. § 23.105 (if unable to obtain "accurate contact information for a Tribe" or a Tribe "fails to respond," Department "should seek assistance in contacting the Indian Tribe from the [Bureau of Indian Affairs (BIA) ] local or regional office or the BIA's Central Office in Washington, DC (see www.bia.gov) [https://perma.cc/GYB2-E6UL]").
If the identity or location of the child's parents, the child's Indian custodian, or the Tribes in which the Indian child is a member or eligible for membership cannot be ascertained, but there is reason to know the child is an Indian child, notice of the child-custody proceeding must be sent to the appropriate Bureau of Indian Affairs Regional Director (see www.bia.gov) [https://perma.cc/GYB2-E6UL]. To establish Tribal identity, as much information as is known regarding the child's direct lineal ancestors should be provided. The Bureau of Indian Affairs will not make a determination of Tribal membership but may, in some instances, be able to identify Tribes to contact.
25 C.F.R. § 23.111(e). Effective November 5, 2018, "where the identity and location of the child's parent or Indian custodian or Tribe is known," the Department must send copies of the notices required by 25 U.S.C. § 1912(a) to the "Billings Regional Director, Bureau of Indian Affairs, 316 N. 26th Street, Billings, Montana 59101" except that "[n]otices to the Confederated Salish and Kootenai Tribes of the Flathead Reservation, Montana, must be sent to the Portland Regional Director at the address listed in" 25 C.F.R. § 23.11(b)(11). 25 C.F.R. § 23.11(a), (b)(5).

Upon this inquiry, courts must further "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." 25 C.F.R. § 23.107(a).

We previously noted that reference to the discrete phrase "reason to believe" in the since-superseded 2015 BIA Guidelines inexplicably differed from the phrase "reason to know" as referenced in 25 U.S.C. § 1912(a). In re J.J.C. , 2018 MT 317, ¶ 15 n.2, 394 Mont. 35, 432 P.3d 149. Without need to elaborate on the extent to which the phrases substantively differ, we clarified that our prior cases have used the phrase "reason to believe" interchangeably with the phrase "reason to know," as referenced in 25 U.S.C. § 1912(a) and 25 C.F.R. § 23.107, without intent to deviate from the statutory standard. J.J.C. , ¶ 15 n.2.

See also 25 C.F.R. §§ 23.105, 23.11(a).